JAMES CAFFRAY,                    :

      Plaintiffs,                :        CIVIL ACTION NO.

      v.                         :        3:12-CV-860

BRIAN KISENWETHER,                :
CHARLES ALTMILLER, and                     (JUDGE MANNION)
BUTLER TOWNSHIP,                  :

      Defendants,                :

## MEMORANDUM

Before the court is defendants' motion to dismiss plaintiff's Fourteenth Amendment Due Process, wrongful termination, breach of contract, and fraud claims. (Doc. No. 6.) Defendants also ask the court to dismiss plaintiff's request for punitive damages under all counts and against all defendants. (Doc. No. 6, at 6.) Because plaintiff has withdrawn his wrongful termination claim, (Doc. No. 9, at 23), the court will not address the matter any further. In light of the following discussion, defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

In June 2007, plaintiff James Caffray was appointed to the position of Assistant Butler Township Code Enforcement Officer. (Doc. No. 1, at 3.) Larry Sims, plaintiff's direct supervisor, later resigned from his position as Code Enforcement and Zoning Officer in August 2011, and plaintiff was offered that

position. (Doc. No. 1, at 4.) Plaintiff subsequently commenced discussions with supervisors Kisenwether and Young regarding the terms of an employment contract between himself and the township. (Doc. No. 1, at 4.) Several days later, during a township meeting, he was officially appointed as Zoning and Code Enforcement Officer, and the parties signed an employment agreement providing, in part, that plaintiff could be terminated at any time for just cause by a two-thirds vote of the township supervisors. (Doc. No. 1, at 5.)

While working for Butler Township, plaintiff ran for public office on two different occasions. (Doc. No. 1, at 5-7.) In 2009, plaintiff ran against Mr. Kisenwether, and in 2011 he ran against Mr. Altmiller, both times for a township supervisor position. (Doc. No. 1, at 5.) During the first campaign, plaintiff explains that he engaged in political speech to the effect that he would be a better supervisor than Kisenwether, his campaign opponent. (Doc. No. 1, at 5.) Mr. Kisenwether ultimately won the 2009 election. (Doc. No. 1, at 5.) During the second campaign, plaintiff again claimed that he would be a better supervisor than his adversary. (Doc. No. 1, at 5.) Mr. Altmiller won the 2011 election. (Doc. No. 1, at 5.) During both campaigns, plaintiff also publicly opposed supervisors receiving health insurance and medical cost reimbursements from the township. (Doc. No. 1, at 5.)

The issue of township sponsored health insurance remained contentious even after the elections. Shortly after winning in 2009, Mr. Kisenwether

2

applied for coverage through Butler Township's group plan but was denied. (Doc. No. 1, at 5.) Instead, he bought insurance through from a private provider and accepted reimbursements from the township. (Doc. No. 1, at 6.) Mr. Altmiller also accepted insurance reimbursements from the township. (Doc. No. 1, at 7.) Both plaintiff and Mr. Young, the third township supervisor, criticized Mr. Altmiller and Mr. Kisenwether throughout their terms for dipping into township coffers to cover their medical costs. (Doc. No. 1, at 7.)

As a result of the 2009 and 2011 elections, Mr. Kisenwether and Mr. Altmiller together represented a majority of township supervisors, Mr. Young being the last of the three. (Doc. No. 1, at 8.) During a reorganization meeting in 2012, Mr. Kisenwether and Mr. Altmiller voted to terminate plaintiff from his position as code and zoning enforcement officer. (Doc. No. 1, at 8.) Mr. Young dissented, and Mr. Kisenwether and Mr. Altmiller subsequently voted to terminate his job as full-time road foreman, a position he had held for twenty-two years.[1] (Doc. No. 1, at 9.)

Plaintiff claims his termination was in retaliation for his political campaigns in which he spoke out against the health benefits defendants were receiving and represented that he would be a better supervisor than his opponents. (Doc. No. 1, at 15.) While defendants Kisenwether and Altmiller

---

[1]While the complaint does not fully explain Mr. Young's job responsibilities, he appears to have been a township supervisor and a road foreman.

claimed "the purpose behind the terminations was to see the township go in a new direction financially and to bring fresh faces to the township," (Doc. No. 1, at 9), plaintiff points out that defendants subsequently hired several people who had previously worked for the municipality, undermining the "fresh face" rationale. (Doc. No. 1, at 9-10.)

As mentioned above, plaintiff's employment contract contained a just-cause provision. (Doc. No. 1, at 5.) Plaintiff claims he was never disciplined, counseled, or reprimanded and that he faithfully performed his township duties during the time he was employed by Butler. (Doc. No. 1, at 12.) He also claims the township knew the employment contract was void and unenforceable, but chose not to disclose this information to plaintiff. (Doc. No. 1, at 14.) In fact, Butler Township had previously been a party to litigation in which the state court determined that employment contracts with municipal employees were void unless permitted by state law. (Doc. No. 1, at 14.) Plaintiff further alleges that Butler continues to enter into unenforceable contracts with unsuspecting employees, fully knowing them to be void under Pennsylvania law. (Doc. No. 1, at 14.)

## STANDARD OF REVIEW

Defendant's motion to dismiss is brought pursuant to the provisions of Fed. R. Civ. P. 12(b)(6). This rule provides for the dismissal of a complaint,

4

in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, (Hedges v. United States, 404 F.3d 744, 750 (3d Cir.2005)), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." (Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." (Twombly, 550 U.S. 544, 127 S. Ct. at 1965). This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. (Id.) Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir.2008) (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. 544, 127 S. Ct. at 1964-65)).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. (Sands v. McCormick, 502 F.3d 263 (3d Cir.2007)). The court may also consider

"undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." (Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir.1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." (Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir.2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. (See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir.1994)).

## DISCUSSION

Plaintiff brings his constitutional claims pursuant to 42 U.S.C. §1983. Section 1983 does not itself bestow substantive rights, but instead creates a remedy for violation of a person's constitutional rights. Gonzaga Univ. v. Does, 536 U.S. 273 (2002). The statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . . 42 U.S.C. §1983.

To establish a claim under §1983, a person must prove that someone

deprived him of a constitutional right while acting under the color of state law. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).

## I. Plaintiff's Due Process Claim (Claim One)

To establish a procedural due process claim, a person must show a protected liberty or property interest and a violation of the procedures necessary to abrogate that interest. Biliski v. Red Clay Consol. School Dist. Bd. of Educ., 574 F.3d 214, at 220, 221 (3d Cir. 2009) (quoting Hill v. Borough of Kutztown, 455 F.3d 225, 234 (3d Cir. 2006)). Protected property interests are not usually created by the Constitution itself; rather, "they are created and their dimensions are defined by an independent source such as state statutes or rules entitling the citizen to certain benefits." Shertzer v. Penn Manor Sch. Dist., 422 F.3d 141, 149 (3d Cir. 2005) (citing Goss v. Lopez, 419 U.S. 565, 572-73 (1975)). To adequately demonstrate a property interest, a person must assert more than an "abstract need or desire for it," and a "unilateral expectation" that the person will continue to enjoy the property interest is not sufficient. Chambers ex rel. Chambers v. School Dist. of Philadelphia Bd of Educ., 587 F.3d 176, 195 (3d Cir. 2009) (quoting Bd. of Regents of State Colls. V. Roth, 408 U.S. 564, 577 (1972)).

In this case, the sole inquiry is whether plaintiff had a property interest protected by the Fourteenth Amendment as a result of his employment

7

contract with Butler County and the just cause provision included in that agreement.[2] It is true, as plaintiff states, "a contract with a state entity can give rise to a property right protected by the Fourteenth Amendment." Dee v. Borough of Dunmore, 549 F.3d 225, 230 (3d Cir. 2008) (quoting Unger v. Nat'l Residents Matching Program, 928 F.2d 1392, 1397 (3d Cir. 1991)). However, the mere existence of a contract, without more, does not create a property right. Knaub v. Tulli, 788 F.Supp.2d 349, 355 (M.D.Pa 2011) (citing Unger v. Nat'l Residents Matching Program, 928 F.2d 1392, 1397-98 (3d Cir. 1991)). The Third Circuit has "recognized that employment contracts that contain a just cause provision [are one example of] a property interest in continued employment." Dee, 549 F.3d at 230. On the other hand, municipal employees are generally at-will employees and "[t]he municipality that hires them has the right to terminate their employment for any or no reason so long as the motives are not discriminatory under federal or state law." Elmore v. Cleary, 399 F.3d 279, 282 (3d Cir. 2005); see also Shoemaker v. City of Lock Haven, 906 F.Supp. 230, 233 (M.D. Pa 1995). The question, then, boils down to what circumstances transform an at-will municipal employee into one that may only be terminated for just cause such that he has a cognizable property interest under the Fourteenth Amendment.

---

[2]Defendant's motion to dismiss and accompanying brief in support only address the property interest question, not the procedures necessary to take away the property interest. (Doc. No. 6, at 2-4; Doc. No. 8, at 7-12.)

Plaintiff points to Dee v. Borough of Dunmore, a Third Circuit case, which he cites for the proposition that a just cause provision can create a property interest in the context of municipal employment. (Doc. No. 9, at 10.) In Dee, the plaintiff was a full-time firefighter with the Borough of Dunmore Fire Department. Dee, 549 F.3d at 227. After eighteen years of service, he was suspended[3] without a prior hearing because the borough determined that he had failed to complete his training requirements. Id. Although he was later found to be in compliance with those requirements, he filed suit against the Borough under 42 U.S.C. §1983 alleging, inter alia, that the Borough violated his due process rights by suspending him without notice and a prior hearing. Id. at 232. On appeal, the Third Circuit noted that the plaintiff's collective bargaining agreement contained a just cause provision. Id. at 231. Therefore, the court determine that he had a property interest under the federal constitution and was entitled to certain procedural protections before he was suspended. Id.

At first blush, Dee would seem to support plaintiff's contention that a just cause contract provision has the power to transform at-will employment into a constitutional property interest. In footnote 9, however, the court noted that just cause provisions were expressly authorized by the Pennsylvania

---

[3]The Third Circuit later determined, "The fact that we are dealing with a suspension and not a termination is of no moment at this point in our analysis." Dee v. Borough of Dunmore, 549 F.3d 225, 230 (3d Cir. 2008).

legislature under the Collective Bargaining for Policemen and Firemen Act. Id. at 231, n. 9. The *Dee* court distinguished the facts in that case from other employment cases, explaining that "Pennsylvania law precludes local governments from employing workers as anything except at-will employees unless explicit enabling legislation to the contrary is passed by the Pennsylvania General Assembly. Id. *Dee*, unlike the plaintiff's case, involved a union employee who was statutorily authorized to enter a collective bargaining agreement creating a property interest in his job. Therefore, that case is inapposite and plaintiff's reliance on it misplaced.

The case of Shoemaker v. City of Lock Haven presents an even clearer illustration of why plaintiff's due process claim fails. Shoemaker v. City of Lock Haven, 906 F.Supp. 230 (M.D.Pa. 1995). In *Shoemaker*, the court stated the general rule that "municipal employees in Pennsylvania are employees at-will." Id. at 233; see also Elmore v. Cleary, 399 F.3d 279, 282 (3d Cir. 2005). While there are exceptions to this general rule, "[a]t will employees can demonstrate a property interest . . . only by showing an enforceable expectation of continued employment . . . or some form of guarantee of continued employment extended by the employing municipality." Id. In Shoemaker, the plaintiff argued that his employment contract was sufficient by itself to create a property interest in his municipal job. Id. Like plaintiff in the present case, Mr. Shoemaker's contract with the city contained a "just clause"

10

provision. Id. Mr. Shoemaker claimed that this guarantee "gave him a legitimate expectation that he would [keep his job] absent just cause for his detention." Id.

The court found for the city, explaining:

[i]t is true . . . that in Pennsylvania, a public employer, in this case, the City of Lock Haven, has the authority to enter into an employment agreement for a time certain only if the Pennsylvania legislature has authorized it to do so. Otherwise, such authority is absent and a purported promise of employment for a definite period is unenforceable. Id. at 234.

Authorization is not implicit in the state's general grant of power "to carry out the essential functions of the municipality." Id. at 234. Therefore, a just cause provision cannot create a property interest protected by the Fourteenth Amendment absent express state authorization. Id.

As *Dee* and *Shoemaker* definitively establish, a just cause provision of a municipal employment contract, by itself, is insufficient to create a property interest. Plaintiff does not allege in the complaint or brief in opposition that Pennsylvania law allowed Butler Township to enter into employment contracts, much less just cause contracts, with its employees. Therefore, he cannot establish a property interest necessary to make a claim under the Due Process Clause of the Fourteenth Amendment.

Having found that the plaintiff's contract terms provide him no relief, the court must now consider plaintiff's argument that the doctrine of *in pari delicto* provides a foundation with which to find the contract enforceable. (Doc. No.

11

9, at 12.) *In pari delicto* is a common law defense that derives from the Latin phrase, *"in pari delicto potior est conditio defendentis,"* which means "[i]n a case of equal or mutual fault . . . the position of the defending party . . . is the better one." In re Oakwood Homes Corp., 356 Fed. Appx. 622, 626-27 (3d Cir. 2009) (quoting Richards, Inc. v. Berner, 472 U.S. 299, 306 (1985)). The concept of *in pari delicto* describes "an ill-defined group of doctrines that prevents courts from finding for a plaintiff equally at fault as the defendants." Official Committee of Unsecured Creditors v. PriceWaterhouseCoopers, LLP, 607 F.3d 346, 350, n. 2 (3d Cir. 2010). As such, it has often been described as a defense to a substantive claim and, as far as the court can tell after meticulous research, has never constituted an affirmative cause of action or a basis for recovery of damages. Id.; Wishnefsky v. Riley & Fanelli, P.C., 799 A.2d 827, at 829 (Pa. Super. Ct. 2002); Feld & Sons, Inc. v. Pechner, Dorfman, Wolfee, Rounick, & Cabot, 458 A.2d 545 (Pa. Super. Ct. 1983).

Here, plaintiff utilizes *in pari delicto* in a completely different manner. Having acknowledged that the just cause provision of his contract does not create a property interest, he claims the court should enforce the contract because his innocence is rivaled only by Butler Township's culpability.[4] (Doc.

---

[4]This argument, were it adopted, would appear to eviscerate many rules governing the enforcement of contracts because courts would be able to provide relief under *in pari delicti* any time one of the parties to an agreement was more responsible for wrongdoing than the other party.

12

No. 1, at 13.) In other words, he claims Butler Township knew the contract was void and used it to entice him to take the township job while he had no idea the contract was illegal; therefore, he should be able to enforce it. (Doc. No. 1, at 13.) Plaintiff's sole support for this argument comes from a case called Sacco v. Township of Butler, ironically enough a contract case against the same township *sub judice*. Sacco v. Township of Butler, 863 A.2d 611 (Pa. Commw. Ct. 2004). In a footnote constituting dicta,[5] the *Sacco* court noted, "[w]hen the parties to a contract against public policy or otherwise illegal are not *in pari delicto*, or equally guilty, and when public policy is considered as advanced by allowing either, or at least the more excusable of the two, to sue, relief may be granted." Id. at 615, n. 3. This quote, taken from a 1959 case called Peyton v. Margiotti, does not signify what plaintiff would have the court believe.[6] Peyton v. Margiotti, 156 A.2d 865, 868 (Pa. 1959). When read in context, it indicates that, when there is a contract and the other party raises an *in pari delicto* defense, the plaintiff may still recover if the parties are not *equally* guilty, or *equally in pari delicto*. Id. at 92-93. The court

---

[5]The footnote was dicta because the court determined that the plaintiff had waived the issue by not raising it prior to appeal. Sacco v. Township of Butler, 863 A.2d 611 (Pa. Commw. Ct. 2004).

[6]*Sacco* also cites to *Bolduc*, which set forth the requirements to assert an equitable estoppel case against a municipality but makes no mention of *in pari delicto*. Bolduc v. Board of Sup'rs of Lower Paxton Tp., 618 A.2d 1188, 1191 (Pa. Commw. Ct. 1992). Plaintiff explicitly disclaimed any equitable estoppel argument in his brief in opposition. (Doc. No. 9, at 13.)

13

stated:

> [In pari delicto] is a doctrine so well settled as not to be open to discussion that courts will not aid in the enforcement, nor afford relief against the evil consequences of an illegal or immoral contract. . . . The general doctrine is subject to a qualification or exception as widely recognized and as thoroughly established as the rule itself. That exception is that, where the parties are not in equal fault as to the illegal element of the contract, or, to use the phrase of the maxim, are not in pari delicto, and where there are elements of public policy more outraged by the conduct of one than the other, then relief in equity may be granted to the less guilty. Id.

The ultimate basis for relief, as indicated by *Peyton*, would be under a breach of contract theory, not a theory of *in pari delicto*. *In pari delicto* is a contract defense, and *Peyton* simply acknowledged that there are exceptions to the defense. Here, plaintiff raised the issue of *in pari delicto*, not defendants, and he has used it incorrectly as an independent basis for recover. Therefore, plaintiff's *in pari delicto* claim fails.

Apart from plaintiff's contract and *in pari delicto* arguments, plaintiff has provided the court with no other support for enforcing his employment contract and finding a property interest in plaintiff's municipal job. Even when looking at this claim in the light most favorable to plaintiff, as the court must, he has failed to adequately state a claim for which relief can be granted. As such, defendants' motion to dismiss plaintiff's Fourteenth Amendment Due Process claim is hereby **GRANTED**.

## II. Plaintiff's Breach of Contract Claim (Count Three)

In addition to failing to establish a due process claim, plaintiff's employment contract is unable to form the basis of a breach of contract claim. When a "government entity enters into a contract beyond its authority, the contract is void and unenforceable. Clairton Slag, Inc. v. Department of General Services, 2 A.3d 765, at 782 (citing Bolduc v. Bd. of Supervisors of Lower Paxton Twp., 618 A.2d 1188 (1992)). As previously explained, "a public employer [in Pennsylvania] has the authority to enter into an employment agreement for a time certain only if the Pennsylvania legislature has authorized it to do so." Shoemaker v. City of Lock Haven, 906 F.Supp. 230, 234 (M.D.Pa. 1995).

Here, plaintiff demonstrates that he had an employment contract with Butler Township but fails to identify any state authorization for the contract. As such, the power to enter into the contract was beyond Butler Township's authority, and the contract is therefore void. As such, the breach of contract claim is **DISMISSED**.


## III. Plaintiff's Fraud Claim (Count Four)

To make a fraudulent misrepresentation claim under Pennsylvania law, a person must establish six elements:

> (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or

15

recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. (Bouriez v. Carnegie Mellon University, 585 F.3d 765, 771 (3d Cir. 2009) (quoting Gibbs v. Ernst, 647 A.2d 882, 889 (Pa. 1994))).

The pleading rules for fraud stand in sharp contrast to those for pleading other claims under the federal rules. Compare Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain: (1) a short and plain statement . . .) and Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (explaining that Rule 8 "does not require detailed factual allegations") with Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."))

Defendants argue that plaintiff's complaint should be dismissed with regard to the fraud claim for two reasons. First, they argue that plaintiff failed to identify the speaker of the alleged fraudulent statement, instead pointing to Butler Township, an inanimate organization. (Doc. No. 8, at 19.) Second, they claim plaintiff failed to sufficiently allege that defendants had knowledge of the misrepresentation, thereby failing to plead intent to defraud. (Doc. No. 8, at 26, 27.) More specifically, they argue that plaintiff has not alleged sufficient facts to show that the township supervisors knew and, consequently, intended their omissions or false statements to mislead plaintiff. (Doc. No. 8, at 26.)

The Third Circuit has interpreted Federal Rule of Civil Procedure 9(b) to require parties to plead the speaker's identity in a fraud case. Frederico v.

16

Home Depot, 507 F.3d 188, 201 (3d Cir. 2007) (citing Klein v. General Nutrition Co., Inc. 186 F.3d 338, 345 (3d Cir. 1999)); see also Vital Pharmaceuticals, Inc. v. USA Sports, LLC, No. 11-CV-975, 2012 WL 760561, at *7 (M.D.Pa. March 8, 2002) (explaining that particularity requires the "who, what, where, when, and how" of the alleged fraud). In Klein, plaintiffs filed a class-action lawsuit against GNC, Inc., alleging that the company provided investors with fraudulent information about the company's first-quarter earnings. Klein, 186 F.3d at 345. In the complaint, plaintiffs attributed the false statements to "GNC's management" but did not name any officers or other company employees. Id. The Third Circuit granted the motion to dismiss, finding, "[t]he complaint fails to attribute the statement to any specific member of GNC management." Id. The court explained that, because the complaint failed to "identify the speaker of the allegedly fraudulent statements," it did not satisfy the requirements of Rule 9(b). Id.

While Klein applied Rule 9(b) in the securities fraud context, the Third Circuit extended the case's reasoning to common law fraud in Frederico. Frederico v. Home Depot, 507 F.3d 188 (3d Cir. 2007) (analyzing motion to dismiss common law fraud case). In that case, plaintiff sued Home Depot for fraudulent statements regarding the company's return policy and late fees associated with the company's rental vehicles. (Id.) The court explained that a party pleading fraud under Rule 9(b) "must state the circumstances of the

17

alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." Id. at 200 (quoting <u>Lum v. Bank of America, 361 F.3d 217, 223-24 (3d Cir. 2004)</u>). The court continued:

> Plaintiff does not allege *who* at Home Depot informed her that she could not return the vehicle at that unspecified time and that she should return the following morning. . . . We are mindful of Frederico's observation that without the benefit of discover she could not learn the name of the employee with whom she interacted when attempting to return the truck. Nevertheless, her complaint only refers generally to being informed by Defendant, and does not disclose the circumstances surrounding her discussion with, or any information about, the particular individual who informed her that the rental department was closed. Id. at 201 (citing <u>Klein v. General Nutrition Co., Inc., 186 F.3d 338, 345 (3d Cir. 1999)</u>)

Here plaintiff claims Butler Township and Mr. Kisenwether made a fraudulent statement and omitted information in a fraudulent manner. (Doc. No. 1, at 18,19.) As the Third Circuit dictated in *Klein* and *Frederico*, alleging that an organization made a fraudulent statement does not meet the particularity requirement of Rule 9(b). Plaintiff nevertheless seeks to distinguish these cases by arguing, "where there are material omissions such as those present here, the question is not who is the speaker, but instead who should have disclosed the material matter which was omitted." (Doc. No. 9, at 17.) This distinction is immaterial. While it is fairly obvious that a fraudulent omission case does not require a fraudulent speaker, plaintiff fails to identify who's failure to disclose the omitted material constituted fraud. Plaintiff admits that he must identify the party responsible for failing to disclose the

18

information, but does not plead who that person was. Therefore, defendants'

motion to dismiss the fraud claim is **GRANTED** as to Butler Township.

Because plaintiff does, however, plead that Mr. Kisenwether made a

fraudulent statement and omitted information, the motion to dismiss is

**DENIED** as to him.

Defendants next argue that plaintiff did not plead with particularity the

element of intent.[7] (Doc. No. 8, at 19-20.) While Rule 9(b) requires a party to

plead fraud with particularity, it allows parties to plead intent generally. Fed.

R. Civ. P. 9(b) ("In alleging fraud . . . a party must state with particularity the

circumstances constituting fraud or mistake. . . . [I]ntent may be alleged

generally.") The Supreme Court has warned, however, that the relaxed

pleading standard for intent does not allow conclusory allegations. Ashcroft

---

[7]Defendants' brief in opposition is somewhat unclear as to their grounds
for objection. While they mention both the knowledge and intent elements
required to establish fraud, their argument ultimately appears to focus on
intent. Defendants state:

Mr. Altmiller and Mr. Kisenwether were not Township Supervisors
at the time of the [case that determined Butler Township's prior
municipal employment contracts were void] and the Complaint
alleges no facts that they had personal knowledge of that litigation
at the time the Employment Agreement was entered into by the
Township. As this purported fact is vital to Plaintiff's
misrepresentation claim, he should allege supporting facts that
would link knowledge of the [prior] litigation to Mr. Kisenwether
and Mr. Altmiller to at least suggest there was an **intended** fraud.
(Doc. No. 8, at 27 (emphasis added)).

19

v. Iqbal, 556 U.S. 662, 687 (2009). According to the Court, "generally" is a relative term and should be read in conjunction with the normal pleading standard required by Rule 8. Id. Viewed in this context, a party must plead intent using a "short and plain statement" and alleging "enough facts to state a claim to relief that is plausible on its face." Fed. R. Civ. P. 8; Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007).

In the complaint, plaintiff alleges that "Mr. Kisenwether intended to induce Mr. Caffray to act on their false offer of continued employment and by their material omissions." (Doc. No. 1, at 19.) Furthermore, plaintiff notes that the issue of municipal employment contracts was litigated in 2004 in the *Sacco* case, only five years before Mr. Kisenwether became township supervisor. (Doc. No. 1, at 13.) In *Sacco*, the court determined that municipal employment contracts were not authorized by the Pennsylvania legislature and that all such contracts were void.[8] (Id. at 13 (citing Sacco v. Township of Butler, 863 A.2d 611 (Pa.Commw.Ct. 2004)). While it is certainly possible that Mr. Kisenwether was not put on notice by the *Sacco* case, the temporal

---

[8]The *Sacco* court determined that Pennsylvania municipal employees are at-will employees and that the plaintiff had no property interest in his township job, despite the fact that he signed a ten year contract with the township. Sacco v. Township of Butler, 863 A.2d 611, 614 (Pa. Commw. Ct. 2004). Although Sacco's contract did not contain a just cause provision, it guaranteed him a ten year term for the position of township public works foreman. Id. at 612-13. The court determined that the contract was void and unenforceable absent legislative authorization from the state. Id. at 614.

proximity of that decision provides some, albeit circumstantial, support that Mr. Kisenwether was aware that plaintiff's contract was void. If nothing else, it raises the possibility that someone at Butler Township at the time of the *Sacco* decision knew and informed Mr. Kisenwether about the legality of municipal employment contracts. While this inference is by no means conclusive, the federal rules only require enough allegations for the court to infer a plausible claim, one which discovery will more thoroughly substantiate. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007). Plaintiff has met this standard here and has adequately alleged intent on the part of Mr. Kisenwether. Therefore, the motion to dismiss plaintiff's fraud claim is **DENIED** as to Mr. Kisenwether, but **GRANTED** as to Butler Township.

## IV. PUNITIVE DAMAGES

In the *ad damnum* clause, plaintiff asks for punitive damages under 42 U.S.C. §1983 against defendants Kisenwether and Altmiller for violations of his Due Process and First Amendment rights. (Doc. No. 1, at 19.) He also seeks punitive damages against defendants Butler Township and Mr. Kisenwether for their alleged fraudulent misrepresentations. (Doc. No. 1, at 20.) Because plaintiff's due process claim is dismissed, the court will only consider plaintiff's request for punitive damages relating to the First Amendment and fraud claims.

Defendants also move for a more definite statement pursuant to Rule 12(e) of the federal rules so they can determine whether punitive damages are alleged against defendants in their individual capacities or their official capacities. (Doc. No. 8, at 27.) While the complaint does not specify in which capacity plaintiff seeks damages, he does clarify in his brief in opposition that he is suing Mr. Kisenwether and Mr. Altmiller in their individual capacities. (Doc. No. 9, at 19.) Therefore, the court will deny defendants' motion for a more definite statement.

### A.) Punitive Damages – 42 U.S.C. §1983

Defendants argue and the court agrees that he cannot recover punitive damages against the Township under any of his §1983 claims. See Smith v. Borough of Dunmore, 633 F.3d 176, 183 (3d Cir. 2011) ("a municipality is immune from punitive damages under 42 U.S.C. §1983"). Plaintiff also admits that he cannot recover punitive damages against Mr. Kisenwether and Mr. Altmiller in their official capacity. See Kentucky v. Graham, 473 U.S. 159, 165, 166 (1985) ("Official capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent."). Nevertheless, he argues that he is allowed to recover punitive damages against Mr. Kisenwether and Altmiller in their individual capacities. Id.

In Smith v. Wade, the Supreme Court allowed punitive damages under

§1983 in claims against government employees in their individual capacity, finding no reason to deviate from common law tort principles. <u>Smith v. Wade, 461 U.S. 30,46 (1983)</u>. In noting that punitive damages are generally allowed, the Court stated:

> The remaining question is whether the policies and purposes of §1983 itself require a departure from the rules of tort common law. As a general matter, we discern no reason why a person whose federally guaranteed rights have been violated should be granted a more restrictive remedy than a person asserting an ordinary tort cause of action. Smith offers us no persuasive reason to the contrary. Id. at 46.

The Court therefore decided that §1983 permitted punitive damages if the "defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Id. at 56.

Defendants, on the other hand, retort that punitive damages are inappropriate in cases against municipal employees in their individual capacity because "a suit against a municipal officer in his individual capacity is the same as suing the municipality." (Doc. No. <u>8</u>, at 27.) They take this reading from Doe v. County of Centre, a Third Circuit case analyzing §1983 claims against public officials acting in their individual capacities.[9] <u>Doe v. County of</u>

---

[9]Defendants also cite Gregory v. Chehi for this proposition. <u>Gregory v. Chehi, 843 F.2d 111, 120 (3d Cir. 1988)</u>. *Gregory*, however, never said an individual capacity suit is the same as a municipal suit. Rather it said an official capacity suit is the same as a municipal suit. Id. at 120. While the distinction appears semantic, the difference is momentous because damages

23

Centre, 242 F.3d 437 (3d Cir. 2001). But *Doe* involved a qualified immunity defense and never said that a suit against an individual is the same as one against the municipality. It simply stated, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 453-54 . In light of its holding, the Third Circuit developed a three-part inquiry to determine whether a municipal employee is entitled to qualified immunity:

(1) whether the plaintiffs alleged a violation of their statutory or constitutional rights; (2) whether the right alleged to have been violated was clearly established in the existing law at the time of the violation; and (3) whether a reasonable official should have known that the alleged action violated the plaintiffs' rights. (Id. at 454 (citing Rouse v. Plantier, 183 F.3d 192, 196-197 (3d Cir. 1999)).

The last two prongs of the test look at the "objective legal reasonableness of an official's action, assessed in light of legal rules that were clearly established at the time the officials took the action." Id. (quoting Anderson v. Creighton, 483 U.S. 635, 639 (1987)). In other words, to establish a §1983 claim and avoid a qualified immunity defense, a plaintiff must show that his right was "sufficiently clear such that a reasonable official would have known" that the official's action violated federal law. Id.

The contrast between individual capacity and official

---

come from a different entity and liability is established using a different test.

24

capacity/municipality suits should be glaring, especially when viewed from the perspective of damages. In comparing the two, "an award of damages against an official in his personal capacity can be executed only against the official's personal assets." Kentucky v. Graham, 473 U.S. 159, 166 (1985). Conversely, "a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself." Id. Furthermore, a party can establish personal liability by showing that the "official, acting under color of state law, caused the deprivation of a federal right." Id. Meanwhile, a municipality is liable only when it was the "moving force" behind the violation and the party seeking damages establishes a municipal "policy or custom." Id. (citing Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 (1978)).

Defendants do not present the court with any arguments that the three-prong Doe test is not met with regard to the facts of the present case. They merely explain that individual suits are barred, contrary to what the Third Circuit actually said in Doe. Therefore, the motion to dismiss the claim for punitive damages against Mr. Kisenwether and Mr. Altmiller in their individual capacity for violation of plaintiff's constitutional rights under 42 U.S.C. §1983 is **DENIED**.

## B.) Punitive Damages – Common Law Fraud

### 1.) Butler Township

The Pennsylvania Political Subdivision Tort Claims Act ("PPSTCA") provides, "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa.C.S.A. §8541. The statute provides an exhaustive list of exceptions to the rule, but limits the type of damages that may be recovered for these excepted claims. See 42 Pa.C.S.A. §8542 (enumerating exceptions to sovereign immunity); see also 42 Pa.C.S.A. §8553 (limiting type of damages allowed)). Allowable damages are limited to loss of earnings, pain and suffering, medical and dental expenses, loss of consortium, loss of support, and properly loss. 42 Pa.C.S.A. §8553. The statute does not allow punitive damages. Therefore, the motion to dismiss plaintiff's claim for punitive damages against Butler Township for common law fraud is **GRANTED**.

### 2.) Mr. Kisenwether and Mr. Altmiller

Defendants reiterate the same argument in regard to plaintiff's state law claim for punitive damages as his §1983 claim for punitive damages. (Doc. No. 8, at 27-28; Doc. No. 10, at 9.) As noted in the court's discussion of punitive damages under §1983, a suit against a municipal employee in an individual capacity is categorically different than one against that same person

in an official capacity or against the municipality itself. Defendants simply do not provide the court with any explanation of why punitive damages for fraud should be treated differently in the context of a common law fraud case. Therefore, the motion to dismiss with respect to these damages is **DENIED**.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

Dated: March 4, 2013

O:\Mannion\shared\MEMORANDA - DJ\2012 MEMORANDA\12-860-01.wpd